IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BOBBY N. JACOBSON,

        Plaintiff,                        No. CIV S-08-1828 GGH PS

        vs.

DEPARTMENT OF THE ARMY                   ORDER[1]
BOARD FOR CORRECTION OF
MILITARY RECORDS,

        Defendant.

_____/

        Previously pending on this court's law and motion calendar for May 14, 2009, was defendant's motion for summary judgment, filed April 6, 2009.  Plaintiff appeared in pro se. Defendant was represented by Bobbie Montoya.  Having reviewed the filings in support and in opposition to the motion, and having heard oral argument, the court now issues the following findings and recommendations.

BACKGROUND

        Plaintiff, who is 78 years of age, seeks an order of this court directing the U.S. Department of the Army, Board for Correction of Military Records ("ABCMR"), to issue him a "Purple Heart" based on plaintiff's 1950 Army service in the Korean War during which plaintiff

---

[1] The case proceeds before the undersigned pursuant to the consent procedures of 28 U.S.C. § 636(c).

allegedly sustained shrapnel wounds to his back and chest wall while engaged in hostile action.[2]

Plaintiff enlisted in the Regular Army on July 24, 1950 for a period of three years; he was released from active duty on September 29, 1953 with an undesirable discharge. Record of Proceedings, Aug. 17, 2006, at p. 2. Plaintiff describes the underlying facts as follows (Complaint, at pp. 1-2):

> I was a soldier during the Korean War. In a firefight, a mortar round exploded behind me on the right side of my back. I also took shrapnel in my leg that I pulled out by hand. At first opportunity I went to the battalion and station and told the doctor there what had happened. He gave my back a quick look and said there was nothing wrong with me.
>
> In 2003 I was in the Sutter Roseville, CA. Hospital for elective surgery and x-rays were taken that show shrapnel in my chest wall. I obtained those x-rays, made copies, and sent the copies, along with an explanation of what happened in Korea, to the ABCMR and asked it to change my records and issue me the Purple Heart for the wound. The Board has refused to do so and has forced me into the court for justice.

Plaintiff has submitted the following documentation demonstrating compliance with administrative procedures for obtaining the requested correction of his records:

> 1) January 11, 2008 x-ray report of plaintiff's abdomen by "Northern California HCS" (ordered by Dr. Michael Ashcraft), demonstrating in pertinent part a "Metallic fragment identified near the right chest wall, adjacent to the right 7th rib, likely shrapnel;" confirmed "outside chest x-ray report" submitted by plaintiff on July 12, 2007.
>
> 2) August 24, 2006 cover letter from ABCMR Director Carl Chun, and copy of the Board's August 17, 2006 Record of Proceedings, denying plaintiff's December 26, 2005 application to be awarded the Purple Heart. Director Chun

---

[2] Plaintiff states in the Civil Cover Sheet that he is suing for personal injury based on medical malpractice. However, plaintiff does not seek damages, nor does he demonstrate exhaustion of administrative remedies under the Federal Tort Claims Act, for which the statute of limitations is two years after the claim accrues, defined in medical malpractice actions as the date upon which plaintiff knows of both the existence of an injury and its cause, although not necessarily the government's negligence. See, e.g., Hensely v. U.S., 531 F.3d 1052, 1056 (9th Cir. 2008). Here plaintiff was alerted to the metallic fragment in his right chest wall pursuant to x-rays taken June 16, 2003. Plaintiff does not aver that he filed any claim under the FTCA, which would have been subject to a June 16, 2005 deadline. Accordingly, absent the submission of evidence enlarging the scope of this action, it is limited to plaintiff's appeal of ABCMR's decision denying plaintiff's request for a Purple Heart, and does not include a claim for personal injury or medical malpractice.

informed plaintiff that the Board has nonetheless identified an administrative error in plaintiff's records that would be corrected, viz., that plaintiff had met the criteria for, and his records would be corrected to show, an award of the Korean War Service Medal. The Board's Record of Proceedings demonstrates it conducted a substantive review[3] of plaintiff's reconstructed military record[4] and concluded it did not "demonstrate the existence of a probable error or injustice." Record of Proceedings, Aug. 17, 2006, at p. 5. The Board reasoned, "Evidence did not contain any general orders which awarded the applicant the Purple Heart. There were no Army medical records available which show the applicant was wounded or treated for wounds as a result of hostile action during his service in Korea. In the absence of such evidence, there is insufficient basis for award of the Purple Heart in this case." Id., at p. 4.

3) June 19, 2007 letter from plaintiff to the Board challenging its August 2006 decision.

4) September 20, 2007 cover letter from ABCMR Director Catherine C. Mitrano, and copy of the Board's September 13, 2007 Record of Proceedings, denying plaintiff's request for reconsideration despite submission of additional evidence including an "article from the United States Army in the Korean War," a "morning report," and additional medical records.[5]

---

[3] The Board initially stated that the purpose of its substantive review was "to determine if it would be in the interest of justice to excuse the applicant' failure to timely file" for correction of his military records, normally required within three years after discovery of the alleged error or injustice (citing 10 U.S.C. § 1552(b)). After concluding that plaintiff should have discovered the alleged error or injustice on or before September 29, 1953 (concluding the three statute of limitations for seeking correction of military records, 10 U.S.C. § 1552(b))), the Board nonetheless found that "*it is appropriate to waive failure to timely file in this case based on the fact there is no statute of limitations on requests for award of the Purple Heart*." Record of Proceedings, Aug. 17, 2006, at p. 2, 4-5 (emphasis added).

[4] The Board noted that "The applicant's military records [were] not available for review. A fire destroyed approximately 18 million service members' records at the National Personnel Records Center in 1973. It is believed that the applicant's records were lost or destroyed in that fire. However, there were sufficient documents remaining in a reconstructed record to conduct a fair and impartial review of this case." Record of Proceedings, Aug. 17, 2006, at p. 2.

[5] Plaintiff has also submitted the following: A September 19, 2007 cover letter from ABCMR Director Catherine C. Mitrano, and copy of the Board's September 13, 2007 Record of Proceedings, denying plaintiff's application to upgrade his undesirable discharge. The Record of Proceedings recounts plaintiff's rationale for the application (id., at p. 2): "The applicant states, in effect, that he was unjustly given an undesirable discharge because no consideration was given concerning his untreated combat wounds, depression, anxiety or Post-Traumatic Stress Disorder (PTSD). He states that he never received legal counseling or any other form of counseling prior to his discharge. He states he should have received an honorable or medical discharge." While acknowledging that plaintiff's military record lacks pertinent information, because of the destruction of such records in 1973 (see n. 3), the Board found that plaintiff had failed to make any showing that would undermine institutional deference to the judgment of plaintiff's commander at the time he discharged plaintiff. Plaintiff does not reference this matter in his

1  DISCUSSION

2  I.  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

3          Summary judgment is appropriate when it is demonstrated that there exists "no

4  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

5  matter of law."  Fed. R. Civ. P. 56(c).

6                    Under summary judgment practice, the moving party
                     always bears the initial responsibility of informing the district court
7                    of the basis for its motion, and identifying those portions of "the
                     pleadings, depositions, answers to interrogatories, and admissions
8                    on file, together with the affidavits, if any," which it believes
                     demonstrate the absence of a genuine issue of material fact.
9

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

11  P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

12  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

13  depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

14  should be entered, after adequate time for discovery and upon motion, against a party who fails to

15  make a showing sufficient to establish the existence of an element essential to that party's case,

16  and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

17  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

18  necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

19  should be granted, "so long as whatever is before the district court demonstrates that the standard

20  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

21  2553.

22          If the moving party meets its initial responsibility, the burden then shifts to the

23  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

24  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

25  _____

26  complaint and therefore any attempt to challenge this Board decision is not before this court.

1   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

2   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

3   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

4   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

5   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

6   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

7   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

8   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

9   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

10  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).[6]

11      II.  STANDARDS OF REVIEW FOR CORRECTION OF MILITARY RECORDS

12          Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702,[7] federal

---

[6]  In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

[7]  5 U.S.C. § 702 provides in full:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:  Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

1    courts have subject matter jurisdiction to review decisions of the Army Board for Correction of

2    Military Records.  See Guerrero v. Stone, 970 F.2d 626, 628 (9th Cir. 1992) (finding subject

3    matter jurisdiction to review decisions of the ABCMR pursuant to § 702, which "waives

4    sovereign immunity for equitable actions brought pursuant to 28 U.S.C. § 1331 [federal question

5    jurisdiction]").[8]  After noting the statutory authority accorded boards for correction of military

6    records,[9] the Guerrero court identified the standard for judicially reviewing the decisions of the

7    various boards (ibid.):

8           The Supreme Court has stated, "Board [for Correction of Military Records]
            decisions are subject to judicial review and can be set aside if they are arbitrary,
9           capricious, or not based on substantial evidence."  Chappell v. Wallace, 462 U.S.
            296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983).  Moreover, as stated in
10          Secretary of Navy v. Huff, 444 U.S. 453, 458, n. 5, 100 S.Ct. 606, 609, n. 5, 62
            L.Ed.2d 607 (1980), "the federal courts are open to assure that, in applying
11          [military] regulations, commanders do not abuse the discretion necessarily vested
            in them."  See also Sanders v. United States, 594 F.2d 804, 811, 219 Ct.Cl. 285
12          (1979) ("Once a plaintiff has sought relief from the Correction Board, such
            plaintiff is bound by that board's determination unless he can meet the difficult
13          standard of proof that the Correction Board's decision was illegal because it was
            arbitrary, or capricious....").  We are persuaded by the reasoning in Neal v.
14          Secretary of Navy, 639 F.2d at 1037 (applying this standard in review of decisions
            of Enlisted Performance Board and Board for Correction of Naval Records); see
15          also Ballenger v. Marsh, 708 F.2d 349, 350 (8th Cir.1983) ("Board decisions
            denying 'corrective' action are reviewable by federal courts") (citing cases).

16

17          As stated by another court (Cooper v. United States, 203 Ct. Cl. 300, 304-05

18   (1973), and quoted with approval, Grieg v. U. S., 640 F.2d 1261, 1268 (Ct. Cl. 1981)):

19   \\\\\

20   _____

21          [8] "[T]he Army Board for Correction of Military Records is an 'agency' within the
     meaning of the APA, inasmuch as "agency" is defined to include 'each authority of the
22   Government.' 5 U.S.C. § 701(b)(1).  The only exceptions applicable to the military are those for
     'military authority exercised in the field in time of war or in occupied territory,' id. §
23   701(b)(1)(G), and 'courts martial and military commissions,' id. § 701(b)(1)(F), neither of which
     applies here." Guerrero, 970 F.2d at 628.

24          [9] 10 U.S.C. § 1552(a)(1) provides in pertinent part:  "The Secretary of a military
25   department may correct any military record of the Secretary's department when the Secretary
     considers it necessary to correct an error or remove an injustice.  Except as provided in paragraph
26   (2) [not relevant here], such corrections shall be made by the Secretary acting through boards of
     civilians of the executive part of that military department."

1    [This court cannot overturn the] decisions of the Army Board for the Correction of
     Military Records unless they are found to be arbitrary, capricious, and not based
2    upon substantial evidence, or are contrary to applicable laws and regulations.
     Dorl v. United States, 200 Ct. Cl. 626, cert. denied, 414 U.S. 1032 (94 S. Ct. 461,
3    38 L. Ed. 2d 323) (1973).  This showing requires cogent and clearly convincing
     evidence.  Newman v. United States, 185 Ct. Cl. 269, 276 (1968); Stephens v.
4    United States, 174 Ct. Cl. 365, 372, 358 F.2d 951, 954 (1966). There is a strong
     presumption that the board and the Secretary faithfully discharged their duties and
5    the burden is upon plaintiff to prove otherwise.  Callan v. United States, 196 Ct.
     Cl. 392, 450 F.2d 1121 (1971); Biddle v. United States, 186 Ct. Cl. 87 (1968).

6

7            "[J]udicial review of a military corrections board decision 'does not require a

8    reweighing of the evidence, but rather a simple determination that a reasonable mind could

9    support the challenged conclusion.'" Browder v. United States, 79 Fed. Cl. 178, 181 (2007),

10   quoting Donahue v. United States, 33 Fed.Cl. 507, 510 (1995).

11   III.  ANALYSIS

12          A.  Purple Heart

13          At hearing, plaintiff was able to describe some of the circumstances surrounding

14   his injury for which he seeks the Purple Heart.  In no uncertain terms, the battle was horrible with

15   much physical devastation.  The doctor in the field was so busy with casualties and wounded,

16   there is little doubt that he had no time to create medical records of the wounded.  Plaintiff's

17   recollection is that when he was hit with shrapnel, he lifted his shirt for the doctor who told him,

18   "there's nothing wrong with you."  Certainly, plaintiff may have been injured; however, in

19   relative terms, the doctor may have had his hands literally filled with more serious life and death

20   injuries.  Nevertheless, the court finds that the ABCMR's decision not to award the Purple Heart

21   was not arbitrary, capricious or contrary to law.

22          The Board describes the following requirements for receiving a Purple Heart:

23          Each approved award of the Purple Heart must exhibit all of the
            following factors:  wound, injury or death must have been the
24          result of enemy or hostile act; international terrorist attack; or
            friendly fire...[;] the wound or injury must have required treatment
25          by medical officials; and the records of medical treatment must
            have been made a matter of official Army records.

26

1   Army Reg. 600-8-22 ¶ 2-8k(3); (Def.'s App. 3.)

2            The evidence presented by plaintiff to the ABCMR consisted of x-rays and a

3   diagnostic imaging report ("DIR"), dated June, 2003, which revealed a metallic foreign body in

4   his chest wall.  (AR 40.)   In his request for reconsideration, plaintiff submitted the same DIR,

5   with a typed addendum by Dr. Hofer, stating, "The 5 mm metallic fragment within soft tissue of

6   the right lateral chest wall on further review is consistent with shrapnel presumably related to old

7   wound."  (AR 26.)  Plaintiff also submitted a letter stating that he sustained combat injuries in

8   the form of a mortar round which exploded behind him, during the Korean War in September,

9   1950.  He states that a medic crawled over to him, gave him "a shot, and made out a tag." (AR

10  35.)  Other documents were not directly pertinent to plaintiff's claim; however, he did submit a

11  Morning Report, dated September 22, 1950, indicating plaintiff's duty status changed from

12  "duty" to "absent, sick in hospital."[10]  On reconsideration, the ABCMR rejected this evidence.

13  AR 2-5.  It noted that the newly submitted article did not reference plaintiff's claims of injury by

14  shrapnel.  The morning report, although describing plaintiff as in hospital, did not note that he

15  was in hospital due to a wound sustained in combat.  The DIR with its newly added addendum

16  did not state that the metal consistent with shrapnel was due to an enemy mortar round in the

17  Korean War (although a doctor's report years after the fact would be hard pressed to have such

18  specific knowledge).

19           With his opposition, plaintiff presents evidence which defendant asserts was never

20  provided to the ABCMR.  Included is a Morning Report, dated September 16, 1950, which

21  includes plaintiff's name but does not include his status or any personnel change.  (Pl.'s Oppo. at

22  4.)  Plaintiff has also submitted what is apparently a copy of his 1951 court martial conviction, in

23  which plaintiff's testimony of being wounded in "the latter part of August 1950 or 1 September

24  1950" is referenced.  (Id. at 8.)  Plaintiff has also attached two news articles which recount the

25  _____

26      [10]  Another Morning Report, dated September 23, 1950, contains his name.  The
    remainder of the report is unreadable due to poor copy quality.  (AR 17.)

Battle of Unsan in November, 1950, and concludes that the 8th Cavalry lost more than 600 soldiers during this battle.  (Id. at 9, 10.)  Plaintiff argues that this article pertains to his regiment and its destruction.

The problem inherent in this case is the lack of record retention.  The article in the Administrative Record entitled, "South to the Naktong, North to the Yalu," written by an Army combat historian sent to Korea during that war to prepare the Army's history of the war, (AR 13), describes the record keeping situation:

> Official records are indispensable for fixing dates and time of major events and troop movements.  But anyone familiar with the way the records of combat units during battle are made up will know that they seldom tell the essential facts of what happened, and how, and why.  They are often the products of indifferent clerks transcribing, [] places remote from the scene of action, a minimum of messages for something-anything-that will satisfy the official requirement for a report.  Those who know the most about an action or an event seldom take the time to tell, or write about it.  They are too tired, or too nearly dead, or they are dead.
> In the *early months* of the Korean War there was little time for the military organizations committed there to keep adequate records of what they did, even had there been the desire to do so.

(AR 15.) (emphasis added.)  This description would be particularly true of plaintiff's injury as it allegedly occurred in August or September of 1950, some two to three months after the war began in June, 1950.  (AR 13.)

The second problem with record unavailability in this case is the previously referenced fire in 1973 which destroyed Army records of about 18 million service members, including plaintiff.  These events and corresponding lack of evidence cannot be attributed to plaintiff, and the evidence available will be considered with this background in mind.

Turning to the first element required for a Purple Heart, the evidence before the ABCMR was that the metal fragment in plaintiff's chest wall is consistent with shrapnel, according to a doctor who reviewed plaintiff's DIR in 2003.  Defendant reasonably argues that the doctor's conclusion that it was presumably from enemy fire is speculative, in light of the passage of over fifty years.  Defendant further points to DD Form 214, which contains an entry of

1   "none" for "wounds received as a result of action with enemy." (AR 30, 36.) This form was

2   issued after plaintiff's discharge from the Army in 1953, and plaintiff never sought to correct this

3   entry. Def.'s Mot. at 4. Plaintiff's complaint is not verified, and his opposition contains no

4   declarations. Although plaintiff has submitted evidence of his testimony at his 1951 court

5   martial, defendant claims that this evidence was not presented to the ABCMR and should not be

6   considered. Nevertheless, the cover page of this report is a letter to plaintiff from the Department

7   of the Army, dated September 24, 2008, containing the certified copy of his court martial

8   conviction. (Pl.'s Oppo. at 8.) Even if defendant did not receive this evidence from plaintiff

9   during the earlier review, defendant had access to its own records, of which this was one.

10  Defendant concedes that the ABCMR "scoured plaintiff's records," and having done so, it would

11  have come across this court martial conviction in which plaintiff testified.[11]

12          Furthermore, new evidence is permitted if it was unavailable below. Krzeminski

13  v. United States, 13 Cl. Ct. 430, 437 (1987) quoting Long v. United States, 12 Cl.Ct. 174, 176,

14  177 n. 2 (1987). Based on the Army's access to the court martial record relating to plaintiff, and

15  its previous unavailability to plaintiff, the record of plaintiff's court martial is accepted.

16  Plaintiff's testimony from 1951 is that he was wounded in August or September, 1950. Because

17  plaintiff was stationed in Korea during the time he was wounded, it can be inferred that the metal

18  in his chest is shrapnel from the Korean War. Even if the court martial conviction is not

19  considered because it was outside the administrative record, the remainder of the evidence leads

20  to the same conclusion in regard to this factor.

21          The second factor, that the wound or injury must have required treatment by

22  medical officials, is more difficult for plaintiff to establish. The ABCMR record indicates two

23  hospital visits around the time period in question; however, both admissions were for other

24  reasons. On March 14, 1951, plaintiff was admitted for an infection. On June 9, 1951, plaintiff

25

26      [11] Defendant refers to the 1973 fire which destroyed plaintiff's records; however, the
    court martial record was apparently not one of those files. (AR 29; Pl.'s Oppo. at 7.)

was admitted for a "contusion to his buttocks, hip, and leg." (AR 30.)   At hearing, plaintiff referred to another hospital visit on September 22, 1950, due to being hit by a bunker, wherein logs and dirt fell on his legs, almost breaking them.  The Morning Report submitted and referenced *supra*, apparently relates to this incident, which occurred about three to four weeks after his alleged injury by enemy fire.  Plaintiff could not point to any other hospital admission for his chest wound; however, he did explain the circumstances surrounding his chest injury.  His regiment was in a heated battle in which soldiers all around him were getting killed by the enemy.  He lifted his shirt to show the doctor his wound, and the doctor responded by saying there was nothing wrong with him.  Plaintiff argues that he had to concentrate on staying alive during this battle instead of getting needed medical attention.  He states that he did all he could in this regard, and that it is not his fault that the Army did not treat his wound or record it.

Whether or not plaintiff was refused treatment, as he now contends, is not the issue.  Assuming that plaintiff was denied treatment, the fact of the matter is that he continued serving actively in the war on the battlefield for some period of time.  His active service without receiving any medical treatment for his wound works against him as it establishes that his wound was not significant enough to *require* treatment.  He also did not suffer complications of this wound as he concedes that he did not file a claim until he was made aware of his 2003 diagnostic imaging results which indicated the metal fragment in his chest wall.

Plaintiff's failure of proof for the second factor almost certainly results in a failure of the third factor, that the records of medical treatment must have been made a matter of official Army records.  None of the evidence submitted indicates that plaintiff received medical treatment that was documented in official military records during the time period in question.

Based on plaintiff's failure of proof, he cannot show that the Army's decision was arbitrary or capricious, not based on substantial evidence, or contrary to law.  Plaintiff has failed to make such a showing by "cogent and clearly convincing evidence." Dorl v. United States, 200 Ct. Cl. 626, *cert. denied*, 414 U.S. 1032 (94 S. Ct. 461, 38 L. Ed. 2d 323) (1973).  The court

1    cannot find that the ABCMR exhibited any clear error of judgment or did not consider the

2    relevant factors.  Arizona Cattle Growers' Ass'n v. U.S. Fish and Wildlife, 273 F.3d 1229, 1236

3    (9th Cir. 2001).   This court is not permitted to "serve as a super correction board that reweighs

4    the evidence."  Schaefer v. Geren, 607 F.Supp.2d 61, 68 (D.D.C. 2009).[12]

5              The court is sympathetic to plaintiff's argument that it is not his job to treat and

6    record his wound; however, in relative terms, the wound was not one that required treatment in

7    comparison to other wounds and casualties occurring in the heat of battle.

8              B.  Plaintiff's Other Claims

9              In his opposition, plaintiff claims that the ABCMR unlawfully denied him an

10   upgraded discharge.  (Oppo. at 2.)  This claim was not raised in the complaint, and defendant

11   represents that although plaintiff did apply for an upgrade, it was denied, and denied on

12   reconsideration on November 25, 2008, more than three months after plaintiff filed the instant

13   action.  Therefore, this claim will not be considered.

14             Plaintiff also claims that the same board members who denied his request for

15   reconsideration in regard to the Purple Heart also denied his request to change his discharge from

16   undesirable to honorable or medical.  He explains that in ruling that plaintiff had not proved he

17   was wounded in combat, the Board "destroyed it[]s chance of giving me a fair and impartial

18   decision with my discharge application."  (Oppo. at 2.)  The basis for his discharge upgrade

19   application was that the decision to discharge him dishonorably was without due process because

20   the Army did not know of his wound.  Plaintiff has presented absolutely no evidence in support

21   of this claim.

22   \\\\\

23

24        [12]  Plaintiff's submission of a case at hearing is distinguishable in that it concerned
     administrative review by the Board of Veterans' Appeals following a Board remand.  The
25   standard of review in this court does not permit consideration of new evidence such as that
     submitted to the Board there, except as explained supra.  See Krzeminski, 13 Cl. Ct. at 437
26   (permitting new evidence only where it was unavailable below or plaintiff establishes bad faith or
     improper behavior).

1          Likewise, plaintiff's claim that the use of Army Regulation 600-8-22 against him

2   is discriminatory and violates his contract with the Army and his right to equal protection and

3   justice, is not supported by any evidence.

4   <u>CONCLUSION</u>

5          Accordingly, good cause appearing, IT IS HEREBY ORDERED that defendant's

6   motion for summary judgment filed April 6, 2009, is granted and judgment is entered in favor of

7   defendant.

8   DATED:   09/29/09                          /s/ Gregory G. Hollows

9                                              _____
                                               GREGORY G. HOLLOWS
                                               U. S. MAGISTRATE JUDGE
10  GGH:076/Jacobson1828.msj.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26